# Brandeis Machinery and Supply Company v. Commercial Auto Company.

(Decided March, 3, 1925.)

## Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Reformation of Instruments—Will be Adjudged, where Evidence Leaves no Doubt of Truth.—Though reformation of instrument will not be adjudged on mere preponderance of evidence, where evidence is satisfactory and leaves no doubt of truth, reformation will be granted.

2. Reformation of Instruments—Evidence Held to Warrant Reformation of Contract Because of Mutual Mistake.—Where contract between distributor and dealer in traction units contained words, "this contract to be accompanied with check for $480.00, i. e., 10% on ten 3-ton traction units," evidence held to justify reformation on ground of mutual mistake, to include agreement by dealer to purchase ten units.

R. L. PAGE and DAVIES, PAGE & DOWNING for appellant.

LEO J. SANDMANN for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

On the former appeal of this case it was held that the agreement set up in the counterclaim was not shown by the written contract relied on and the judgment in favor of the defendant was reversed, the court holding that if the contract did not contain the complete agreement the only remedy of the defendant was to seek a reformation thereof on the grounds of fraud or mistake. Commercial Auto Co. v. Brandeis Machinery Co., 198 Ky. 155.

On the return of the case to the circuit court the defendant filed an amended answer in which it alleged that the plaintiff agreed with it that it would purchase from the defendant, during the life of the contract, ten 3-ton traction units at the published list price, less a discount of 20% therefrom, freight to be added; that the written contract was intended to include the agreement on the part of the plaintiff to purchase from it ten 3-ton units, at a net cost of $480.00 each, plus freight charges of $11.00 each, but that by mutual mistake of the plaintiff and defendant the agreement was omitted from the writ-

ten contract. The allegations of the amended answer were controverted by reply; proof was taken and on final hearing the circuit court refused to reform the contract. The defendant appeals.

The proof shows that the defendant was doing a wholesale or distributing business in Louisville, Kentucky. It bought cars and tractors by the carload from the makers and sold these to dealers, to whom they assigned certain territory in the state. On November 9, 1917, the defendant made a contract with the plaintiff by which it gave the plaintiff, as its dealer, Lexington and Fayette county. One of the terms of that contract was that the plaintiff should keep on hand one Knox traction unit for demonstration. The contract was to expire on December 31, 1918. On January 25, 1918, the defendant wrote the plaintiff that the state highway engineers were to meet in Newport between the 14th and 18th of February and at that time the defendant wanted to make a drive among the engineers and road contractors on the traction unit, and asked the plaintiff if it would be willing to drive a 3-ton unit to Newport at that time to show these people for those three or four days, with the idea of forming a market through the dealer's territory on this outfit. On January 29th the plaintiff answered this letter, saying it would be very glad to bring a tractor to Newport, provided the plaintiff would give it the contract for the counties it wanted to handle prior to this exhibit, adding this: ''We are perfectly willing to contract for two units for each county that is included in our contract.'' On January 30th the defendant answered that it noted what plaintiff said about its contract and that the arrangement suggested would be satisfactory and requested the plaintiff to come to Louisville and close the arrangement. The result was that on February 4th the plaintiff's president went to Louisville. This was Monday. The government had cut off the use of coal on Monday. It was a cold day, so when the parties got together they could not go to the defendant's office to draw the contract and they could not get a stenographer or a lawyer so they went to a restaurant. At the restaurant they used a blank form similar to the one that had been signed on November 9th. In this contract the following words are written in ink: ''This contract to be accompanied with a check for $480.00, *i. e.,* 10% on ten 3-ton units.'' The contract was duly signed by the parties.

It was to expire by limitation on December 31, 1918, and in it eleven other counties adjoining Fayette or near it were made the dealer's territory.

Two of the defendant's officers and two of the plaintiff's officers were present when this contract was made. The defendant's officers both testified unequivocally that the contract was made as set out above and that the additional territory was added for this reason. On the other hand the defendant's officers testify that they made no agreement to take ten 3 ton-traction units and that this number was only mentioned as an estimate of what they thought they could sell. After the writing was made up in Louisville the plaintiff's president took it to Lexington with him and on February 5th he wrote the defendant the following letter:

"Inclosed find contract signed which we are sending for your approval, also check for $480.00, which is 10% deposit on ten 3-ton units. Please ship one of these 3-ton units out at once and the remainder are to be shipped as ordered."

On February 6th the defendant shipped to plaintiff one 3-ton unit at $600.00, plus $11.00 freight, less 20% discount of $120.00 and $48.00 deposit, leaving a balance due of $443.00, for which it made a draft on the plaintiff. The draft was paid and no complaint made and no explanation was asked. On March 20th the defendant wrote the plaintiff saying:

"Our carload of traction units has arrived. We had hoped to have an order from you for at least one 3-ton unit by this time to cover your contract."

The plaintiff answered this letter on March 25th with these words:

"We have one three-ton and three two-ton in stock at present. We are not ready for you to ship us any just now."

In the spring of 1918 the market on these tractors broke and the plaintiff did not order any of the other nine tractors to be shipped. The defendant by counterclaim sought to recover the loss on these tractors. Its right to recover depends on its right to a reformation of the contract. While a reformation will not be adjudged

on a mere preponderance of evidence it will be adjudged where the evidence is satisfactory and leaves in the mind no doubt of the truth. The words of the written contract, "This contract to be accompanied with a check for $480.00, that is 10% on ten 3-ton traction units," must be given some reasonable meaning, according to the actual intent of the parties in using them. The tractors cost $480.00 each and 10% of the cost of ten tractors would be $480.00. What the parties meant by these words is best shown by the letters which they wrote at the time. In sending the check for the $480.00 the plaintiff said: "Inclosed find . . . check for $480.00, which is 10% deposit on ten 3-ton units." The writer of this letter clearly understood that they had agreed to buy ten 3-ton units at $480.00 apiece, else he would not have sent a check for $480.00, saying that it was a 10% deposit on ten 3-ton units. If there could be any doubt about this it is set at rest by the bill which was sent for the first tractor which was shipped, for that bill was credited by $48.00, the deposit on that tractor. That the Louisville people understood the contract as a contract of purchase is also shown by the fact that on March 20th they wrote that they had hoped to have an order for at least one 3-ton unit by that time "to cover your contract." In the answer of the plaintiff to that letter of March 25th there was no statement that this was not the contract or that there was no contract, but they simply said that they were not ready for the tractors to be shipped "just now." These letters written at the time are unerring evidence as to what the parties understood they had agreed upon in the meeting at Louisville. The correspondence between the parties must be read in the light of the circumstances. Under the contract of November 9th the plaintiff's territory was confined to Lexington and Fayette county. In January the defendant wished a drive made on the tractors among the engineers and road contractors and wished the plaintiff to show these people a 3-ton unit at Newport with the idea of forming a market therefor. The plaintiff then said that they would do this if the defendant would give it the contract for the counties it wanted and agreed that in that event it would contract for two units for each county included in its contract. The meeting was held to put this agreement in shape. In that meeting the plaintiff got the counties it wanted and the defendant's testimony is that

it then agreed to contract for ten 3-ton units. The plaintiff's testimony is that it only estimated that it could sell ten 3-ton units, and though it agreed to put up a deposit of 10% on the cost of ten 3-ton units it had the right to demand back the balance of the deposit not consumed if it did not in fact buy ten 3-ton units. It brought this suit to recover the balance of the deposit on this idea, but such a construction of the contract is in conflict with their own letter in which they said they were willing to contract for two units for each county. The deposit of 10% on ten 3-ton units would be valueless to the defendant in this event, for no obligation would be imposed on the dealer and the dealer in fact would have received the additional territory without any additional obligation. The dealer plainly understood that the check for $480.00 was a "10% deposit on ten 3-ton units," for this is plainly stated in their letter sending the check. A deposit of 10% on ten 3-ton units was meaningless unless there was a contract to take ten 3-ton units. That the defendant so understood the contract is plainly shown by its letter of March 20th, and that the plaintiff then did not controvert this view of the contract is shown by its letter of March 25th, for if it did not then recognize the contract it should have said so, and this it did not do.

It is true this was an important part of the contract which the parties made in Louisville, and it should have been expressed more fully in the writing then drawn, but business men are not experts in drawing written contracts, and while the case would be doubtful without the letters passing between the parties, in the light of these letters there can be no reasonable doubt that the contract was as above indicated.

Judgment reversed and cause remanded with directions to enter a judgment in favor of the defendants.